OPINION
Defendant-appellant, James Green, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, denying his motion to modify child support.[1]
James and plaintiff-appellee, Patricia Murphy-Green, were divorced on December 21, 1999. They have one child, Colin, born October 19, 1991. James works for Carman Ohio Co., Inc., a dry cleaning supply company owned by James, his brother, and their father. Patricia works for Murdoch Magazines Distribution, Inc. Under the parties' shared parenting plan, Patricia was named residential parent for school purposes. James was ordered to pay Patricia $607.31 per month in child support. The child support amount was based upon James' then annual gross income of $43,491 and Patricia's then annual gross income of $34,000.
On February 7, 2001, James filed a motion to modify child support on the grounds that his annual income had significantly decreased in 2000 and that Patricia was no longer paying child care expenses since January 2000. James contended that his 2000 annual income was $20,188.91, thus earning less than half of what he had earned in 1999 ($43,491). By decision filed April 16, 2001, the magistrate partly denied James' motion as follows:
 Mr. Green works in sales with Carman Ohio Co., Inc., which is a dry cleaning supply business owned by Mr. Green's family. According to Defendant's Exhibit 3, Mr. Green owns 30.1325% of the company.
 According to pay stubs (Exhibit 1), Mr. Green earns $700.00 bi-weekly. Mr. Green's 2000 W-2 Statement (Exhibit 2) lists annual income of $20,188.91. The W-2 wages reported on Mr. Green's 1999 Federal Form 1040 were $45,454.00. His 1998 W-2 Statement indicates earnings of $43,491.10. Mr. Green states that the reason his earnings have dramatically decreased is due to a decline in business. Mr. Green offered no evidence to prove a decline in business.
 Mr. Green states that after the parties' divorce, he was not able to qualify for a home loan. Mr. Green states that his father purchased a residence for Mr. Green for which Mr. Green pays the taxes, maintenance and insurance. The residence is owned by Mr. Green's father.
* * *
 I find that modification of the child support order is appropriate because Ms. Murphy-Green no longer pays for child care expenses.
 I further find that Mr. Green's 1999 income should be utilized in determining the new amount of child support. No evidence was submitted to explain the approximately 56% drop in Mr. Green's income from 1999 to 2000. Since Mr. Green is a part owner or essentially self-employed, it is his burden to provide this evidence.
 Mr. Green receives the benefit of having no rent or mortgage payments. No evidence was submitted to determine the value of this benefit, so no consideration has been given in the child support calculation.
* * *
 Mr. Green's child support obligation shall be modified per month, $548.36 per child, plus 2% processing fee, or a total of $559.43 per month, effective February 7, 2001 in accordance with the child support guideline attached hereto.
 James filed objections to the magistrate's decision. By decision filed June 25, 2001, the trial court overruled James' objections and upheld the magistrate's refusal to reduce James' child support obligation based upon James' 2000 gross income. The trial court found that in reviewing the trial transcript * * * there was sufficient evidence for the Magistrate to find Mr. Green's income had not decreased. In considering all sources derived, excluding Section 179-Depreciation Deductions, it is apparent to the Court while Mr. Green had earnings of $20,188.91, Mr. Green also has income as it relates to the corporation.
 A review of the Schedule K, excluding Section 179-Depreciation Deductions, demonstrates earnings, or potential income, of $15,562.00. In addition to those monies, it is apparent Mr. Green still has interest income and is deriving a benefit of other monies from his family.
 While Mr. Green relates the monies received from his family are not through his employment with the family business, the Magistrate alone is the sole determiner of credibility.
 The Court finds the Magistrate was presented with competent evidence to believe Mr. Green's 1999 income should be used for purposes of calculating child support. The Court is not in a position to substitute its judgment for that of the Magistrate. The Magistrate who conducted the hearing was in a position to examine the demeanor of the witnesses and to determine credibility.
James appeals and assigns as error that the trial court abused its discretion by failing to use the parties' current incomes when recalculating James' child support obligation. Specifically, James argues that it was an abuse of discretion for the court to (1) use his 1999 income rather than his reduced 2001 income, and (2) use Patricia's 2000 income of $36,115.44 when Patricia unequivocally testified in March 2001 that she was now earning $40,000 a year. James asserts that both the magistrate and the trial court improperly focused on the fact that his father is temporarily providing him with a house without charging rent. James asserts that his father's assistance is unrelated to employment and therefore cannot be considered self-generated income, as suggested by the trial court.
It is well-settled that a trial court's ruling on a motion to modify child support is reviewed under an abuse of discretion standard. Houtsv. Houts (1995), 99 Ohio App.3d 701, 704. An abuse of discretion is more than an error of law or judgment; rather, it implies that the decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
At the outset, we note that James is a minority shareholder in his family-owned business, a subchapter S corporation. It is well-established that a subchapter S corporation does not pay its own federal income tax.
 Rather, for federal tax purposes it is treated as a proprietorship or partnership and its annual earnings, whether distributed or not, are treated for tax purposes as if they are the personal earnings proportionately of the individual shareholders. The shareholders, therefore, pay federal income taxes on corporate earnings, rather than dividends, together with any other individual taxable income they may have.
Marcus v. Marcus (July 30, 1999), Greene App. No. 98 CA 83, 1999 Ohio App. LEXIS 3462, at *10-11.
R.C. 3113.215(A)(1)(a)[2] defines "income" for a parent employed to full capacity as "the gross income of the parent[.]" R.C. 3113.215(A)(2), in turn, defines "gross income" in relevant part as
 the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses * * *, commissions, royalties, tips, rents, dividends, severance pay, pensions, interest, trust income, annuities, * * * and all other sources of income; * * * self-generated income; and potential cash flow from any source.
 "Self-generated income" is defined as gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including, but not limited to, company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.
R.C. 3113.215(A)(3).
On appeal, James generally argues that the magistrate and the trial court improperly considered the rent-free house provided by his father as self-generated income in their calculation of James' income for child support purposes. We disagree. In its decision, the magistrate stated that "[James] receives the benefit of having no rent or mortgage payments. No evidence was submitted to determine the value of this benefit, so no consideration has been given in the child support calculation." The magistrate clearly did not take James' rent-free housing into account in its calculation of James' income and child support obligation. While the trial court cryptically referred to James "deriving a benefit of other monies from his family[,]" it did not value such benefit or use it for child support calculation. Rather, the trial court simply upheld the magistrate's use of James' 1999 income for child support calculation purposes.
James also argues that the trial court abused its discretion by using his 1999 income rather than his reduced 2001 income in calculating his child support obligation. Upon thoroughly reviewing the record, we find no abuse of discretion for the following reasons.
It is well-settled that the party seeking a modification of his or her child support obligation has the burden of proof to show that the modification of child support requested is appropriate. See Zimmer v.Zimmer, Franklin App No. 00AP-383, 2001-Ohio-4226. After hearing the evidence presented at the hearing, the trial court then decides whether the evidence was credible and whether or not the movant met his or her burden of proof. Yark v. Yark (Jan. 12, 2001), Fulton App. No. F-00-010, 2001 Ohio App. LEXIS 60, at *14.
When "the issue of a corporate proprietor arises in a child support case, the court has a duty to carefully examine the evidence of corporate expenses and deductions as related to possible personal income."Sizemore v. Sizemore (1991), 77 Ohio App.3d 733, 738. A trial court must also "review all circumstances, to determine if the individual proprietor has taken or concealed anything of value from his corporation which should be added to his personal income." Id. at 739. "The possibility of withdrawal of personal benefits from a closely held corporation for living expenses or other personal use requires sharp scrutiny of all available records to prevent avoidance of child support." Id. Consequently, R.C. 3113.215(B)(5)(a) requires that
 [t]he parents shall verify current and past income and personal earnings with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax return.
At the hearing on his motion to modify child support, James testified that while he made $45,454 in 1999, as verified by his 1999 income tax return and his 1999 W-2 form, he only earned $33,319.91 in 2000 ($20,188.91 in wages plus $13,131 as a minority shareholder in his family-owned business). James testified that his 2001 income would be the same as his 2000 income. James corroborated his 2000 income with his 2000 W-2 form and his 2000 Schedule K-1 (which shows a shareholder's share of income). James testified that he did not have his 2000 income tax return because it was not prepared yet. James summarily testified that his family-owned business "didn't have a very good year" in 2000. On cross-examination, when asked "so, you're telling the Court today that the business is on hard times and that you had to take this kind of cut in pay[,]" James simply replied, "yes."
As the parent seeking to modify child support, James had the burden of proof as to his alleged income reduction. However, as the magistrate found, James has offered absolutely no documentary evidence to corroborate his assertion that the family-owned business suffered a decline in business. As a shareholder of a family-owned business, it would have been easy for James to corroborate his assertion, for example by using an employer statement. See R.C. 3113.215(B)(5)(a). James' explanation that 2000 was not a good year for the company is anemic at best and certainly does not meet his burden of proof. James nevertheless argues that his 2000 "W-2 and K-1 accurately reflect Carman's decreased sales and profits[.]" We disagree. These two forms merely reflect James' decreased wages and earnings in 2000.
James also argues that "[t]he absence of testimony or evidence rebutting [his] description of Carman's financial decline is telling." Our response is twofold. First, James only stated that 2000 was not a very good year for Carman. This lone statement hardly qualifies as a description of Carman's financial decline. Second, at the risk of repeating ourselves, the burden of proof is on the movant such as James. We have not found, and James has not cited, any cases where the movant's burden of proof eventually shifts to the obligee. As the Ohio Supreme Court stated in State ex rel. Cook v. Cook (1902), 66 Ohio St. 566, "[t]he defendant's financial condition and ability to pay were peculiarly within his own knowledge. They could not be known with the same certainty to the complainant, nor could she easily produce evidence to maintain the proposition were the burden of proof placed upon her." Id. at 571.
The magistrate found, and the trial court agreed, that James failed to prove that his alleged income decrease was due to a decline in business. The trial court considered the evidence presented but chose to disbelieve certain evidence produced by James. An appellate court is not in a position to second-guess a trial court on matters of credibility. In the absence of evidence to substantiate James' claim that he is no longer capable of earning his prior income because of a decline in business, we find that the trial court did not err by calculating his child support obligation based upon his 1999 income.
Finally, James argues it was an abuse of discretion for the trial court to use Patricia's 2000 income of $36,115.44 when Patricia unequivocally testified in March 2001 that she was now earning $40,000 a year. While Patricia did indeed testify she was now making $40,000 a year, there was no documentary corroboration of her testimony. By contrast, her 2000 income of $36,115.44 was verified by her W-2 form. See R.C.3113.215(B)(5)(a). We therefore find no abuse of discretion in the trial court's use of Patricia's 2000 income in its calculation of James' child support obligation. James' sole assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar.
[2] We acknowledge that R.C. 3113.215 was repealed effective March 22, 2001. See Am.Sub.S.B. No. 180. However, we must review the trial court's application of the law which existed at the time of the trial court's proceedings. The provisions of R.C. 3113.215 applicable to the case at bar have been replaced by R.C. 3119.01 and 3119.05.